First case for argument this morning, case number 20-2061, Western Arkansas, Mark Fochtman, et al. v. Hendren Plastics, et al. and 20-2068, Western Arkansas, Mark Fochtman, et al. v. D.A.R.P., et al. Thank you, Mr. Madizadegan. I hope I came close to that. I believe you're taking the 15-minute primary argument for both appellants. Your Honor, earlier D.A.R.P. has ceded its time to Hendren, and so Hendren will be arguing for both appellants, and we would reserve four minutes for our rebuttal. Just to confirm that, Your Honor, we have discussed this. I believe the argument, Mr. Madizadegan will be presenting today, are consistent with D.A.R.P.'s position to the extent there may be any difference or issues not covered. However, D.A.R.P. does stand on its brief. Well, that's very good. My note has you doing the rebuttal, but that's up to the two of you, and we actually split arguments are often kind of get out of control, so please proceed, Counsel. May it please the Court, my name is Absin Madizadegan, and I represent the defendant and appellant Hendren Plastics. I would like to reserve four minutes for rebuttal. Every member of plaintiff's class was asked this question. Would you rather serve several years in prison, or would you rather go to a free residential work-based recovery program of six or twelve months, and although you're not going to be paid, you might get out of prison or avoid any criminal punishment, develop life skills, and build this foundation necessary to beat addiction and sustain sobriety. Unsurprisingly, every member of plaintiff's class chose D.A.R.P. because this program provided them with enormous personal benefits, and they all testified that D.A.R.P. was better than prison. They were right, but that was the bargain they struck with the drug courts. Let me stop, may I just stop you there for to confirm something. I'm looking at the order of the Washington County Court regarding Mr. Faulkman in March 2018, and as I read that order, the defendant, paragraph 9, the defendant agrees that the programmer is kicked out. This order is a warrant for his arrest. Now, I don't know how standard that order is, but it tells me, if it's standard, that every hour that every plaintiff is claiming in this case, he or she was under the jurisdiction of the criminal court. Am I wrong or right? You're 100% correct, you're wrong, and again, they did so. They entered this program, more than that, they entered this program voluntarily, knowing they wouldn't be paid, at the advice of their counsel, with the approval of the prosecutors, and ultimately on the drug court's own orders that incorporated D.A.R.P.'s rules, and by extension, its vocational requirement. A counsel, a counsel, they're in this program, and D.A.R.P. can at any time kick them out. That's what the order also says, right? It says with or without cause, just kick them out, right? Your Honor, if they violate D.A.R.P.'s rules, and they're not... No, it doesn't even say that. It says with or without cause. It says D.A.R.P. can kick them out, right? They can, D.A.R.P. can remove individuals per the program and per these orders. Well, now that's not what the court order says, right? It says D.A.R.P. makes those decisions, right? Your Honor, D.A.R.P. does make those decisions, but I would say that in practice, that would only be conducted if a rule was broken, or if the person was no longer willing or capable to participate in the program. But they were able to get into D.A.R.P. because businesses like Hendron Plastics were willing to partner with these drug court programs like D.A.R.P. to provide drug offenders with a real last chance, a real last chance to avoid either a criminal sentence that's awaiting them or to avoid going back to jail. Now, I take it by the silence of the record, let me interrupt you again, that the only business that D.A.R.P. partnered with was Hendron, right? No, Your Honor. Well, now, is that in the record anywhere? I don't see it in your briefs, and we had trouble finding any proof of that in your record. Your Honor, it's in the record. It's in, I believe I could direct your attention to, I believe it's in the 500s of the appendix, and in fact, the first order in this docket, in this case, in Foxman 2, references CARE. So this, and it kind of, it gets to this. No, no, no, talk about the other case and the other organization. I'm talking about, it says D.A.R.P. Foundation at the top, D.A.R.P. Foundation and Hendron. Yes, Your Honor. D.A.R.P. also sent individuals to CARE and other, I'm sorry, to other businesses like Simmons Foods, and I believe that's referenced in our briefing and within the record and during some of the hearing transcripts. Was it also true that this is half of Hendron's labor force? No, Your Honor. Well, I thought that was said, I thought that was said by both of you two or three times. It's half your employees. About 30 employees of a general labor pool. So entry-level employees. So about 30 or half of those entry-level employees. But that doesn't take into consideration all the other employees who work for these businesses, which are well over 100 individuals and seasons might be, you know, 150, 200. So it's 30% or some significant percent still, right? It depends how well. We would concede 30 individuals, Your Honor. Okay, 30 individuals regularly. Go ahead. You had, by the way, you had the power to decide if they came, right? And you also had the power and that you here is Hendron. I know you claim you're representing both of them, although you paid the one off. But you had the power to decide whether to hire him, right? You interviewed him, decide whether. No, Your Honor. Hendron Plastics did not interview or select a single member of plaintiff's class. Those individuals were sent by DARP. Hendron would say, well, from a security standpoint, from just, you know, from an ingress and egress standpoint, we can take about 30 people. That's what Hendron was willing to do to provide these individuals with the benefit of avoiding prison and avoiding their sentences that were waiting for him. It was about 30 individuals, but Hendron never interviewed a single person. The first time they would know who that person was was when they were walking through the door. There's no interview. And Hendron really, as far as kind of getting into the element of what you're talking about is control. Hendron really didn't even have the right to terminate like any staffing customer. I thought I thought the briefs and even your briefs and the other briefs said the other thing. I thought you said you had the right if they weren't performing to send them back in the total, in the time in which it was partner with DARP on three occasions, asked DARP not to send three people, three people back in total because they were safety risks. They violated rules and made it unsafe for Hendron's workforce. Were those three people, were those three people then arrested under the court order? Your Honor, those facts aren't in the record. Hendron doesn't know what happened to them. We're assuming and I should say we're not representing Hendron and my firm does not represent DARP just for efficiency sake. That's why we're covering both arguments. But what happened to them, we're not sure. Certainly, DARP could have sent them to Simmons Food. In some cases, I believe that's what they did. Well, counsel, what does the record show on that? I get a sinking feeling reading your briefs and trying to figure out what's in the record here. The record is relatively silent to that, Your Honor. What held you silent? Okay. I didn't hear what you said. Go ahead. Relatively silent as to what occurred to those three individuals after Hendron asked them not to come back. Isn't that critical? Hire and fire. The United States Supreme Court in Alamo says the key is hire and fire. We're talking about hiring and firing and it seems to me like we don't know the consequence of firing particularly. You say you didn't hire, but DARP definitely did. Go ahead. I think there are a range of cases and I'll speak to Alamo in the Alamo context. I don't think that was quite the central holding of that case. I think in every employment context, the fundamental question, what I tell my law students, this is a contract. The fundamental question is, was there a contract or a bargain for exchange of labor in anticipation or contemplation of compensation? Well, counsel, let me interrupt you. I appreciate you being a professor. I've tried it myself. The Supreme Court says economic reality and the key economic brutality is hiring and firing. Who hires them? Who fires them? And DARP definitely hired them and fire them, right? Do you agree with that? DARP, I don't know that I'd agree with that, your honor. The drug courts agreed to allow these individuals to participate in this program. So the drug courts are the gatekeepers in that respect. DARP would send them to willing businesses who are willing to give these people a final chance to avoid prison. Could DARP reject someone the drug court sent there? I believe the drug court or the diversionary program is built around a team model. So I think everyone has to be on the same page. There are rules about who can come to DARP. You can't take certain medications that require continuity of care if that would interfere with your sobriety or could interfere with that. So prior to anyone going to DARP, they would interview. What seems obvious to me is none of you know really how the drug court program works, and yet it's the essence of the case. Now, let me ask you, as I read 1698-303, a drug court participant, someone who's taken the deal, so to speak, has an administrative remedy if he or she feels that the program to which he was sent is not compliant. Am I wrong? That's precisely correct. Then why under Arkansas administrative law does that remedy not have to be exhausted? Your honor, I think that gets to kind of the heart of our Rucker-Feldman argument. It's not a Rucker-Feldman. That's not a Rucker-Feldman. Come on, that's not. Nobody understands Rucker-Feldman since Exxon. It's dreadful. It's not. It's exhaustion of remedies. I would agree with that point, your honor. And every state's administrative law system regime has exhaustion principles, and I didn't see the district court even taking a peek at that. Correct, your honor. The closest... Why didn't you argue it? Is it foreclosed? I don't think it's foreclosed, particularly if it's an issue that pertains to subject matter jurisdiction, but Hendren certainly raised it below when it argued both items of the Heck versus Humphreys doctrine requires exhaustion if you're challenging an aspect of your sentence. We addressed that in our brief, and so they argued Heck versus Humphreys. This is not necessarily a judicial remedy. It's in the drug abuse treatment statute and the specialty program for drug courts. Correct, your honor. That's where you have to go, and nobody went there. Correct. Instead, your honor, they filed a lawsuit. Let me... Something else I didn't get out of your briefs. If we agree with the Second Circuit's reasoning in Vaughan, what do we do with this case? Your honor, I think if you agree with the Second Circuit's reasoning, you reverse and dismiss. As a matter of law, these individuals... They didn't declare it. They applied the economic reality principle to a government-ordered treatment program, which included private employment, private sector employment. As I read Judge Cabranes' opinion, it's a fact-intensive question. It is, your honor. How can we flat-out reverse on this record if that's the governing law? Your honor, you can because summary judgment motions are reviewed de novo. Hendren filed a summary judgment motion. The plaintiffs did as well. They were competing. It is undisputed that every member of plaintiff's class were court-ordered to DARP and that they admit on page 15 even of their brief that labor was a central component of the drug court recovery program. I think under... Wait a minute. Where's the drug court judge testimony addressing what the judge thought was the scope of the order vis-a-vis the minimum wage law? That would be at pages 689 and 90. Not as to the minimum wage law, but he touches on these issues generally, saying that labor, what he called forced volunteerism, was a central component. Wait. Who are we talking about now? I'm sorry, your honor. Judge Thomas Smith, the sitting drug court judge who testified in this case about his sentencing philosophy and why he believes DARP is a true workable solution for these individuals. And what did he say about the minimum wage question? He eventually gets to say that, well, I thought this is a fair deal. He knew that they weren't expecting compensation and he still sent them there because the heart of this operation is a self-funded mechanism. Counselor, are you not answering the question on purpose? What did he say about whether the Your honor, I'm sorry for not answering your question. He did not speak to the minimum wage law. Oh, well, fine. Now, the Oklahoma judge did address that. Yes, your honor. He quoted colloquies from the drug courts at great length that established far more than we have on this record in terms of what the judge thought the effect of the order was. Now, if we adopt the leaving aside Rooker-Feldman, I think it was unnecessary to rely on that. If we adopt the approach of that court, what do we do with this case? Of the Copeland versus Care Court in the Northern District of Oklahoma? Right. Your 28-J, the decision you sent us. Yes, your honor. I think the same that occurred in that case, which was dismissal. But look at the record he had. I would submit that if we adopt the approach of that court, the only thing that's clear is we decertify the class because every participant has a different colloquy, a different background with his or her drug court judge. And you don't even argue for that. Your honor, I think the record in this respect here is less than it was developed in the Copeland versus Care case because it's not particularly disputed. It's not a fact that's disputed. If it was a disputed fact... Wait a minute. Whether the judge was ordering an arrangement that did not require payment of the minimum wage is disputed as all get out. That's the question. Your honor, they testified, the plaintiffs here testified, and this would be in 1167 and 1183 of the joint appendix, that they wanted to bring the suit to deprive the drug courts of this option of a no-cost, no-pay, diversionary program. They wanted the drug courts to pay for it. In their pleadings, they admit that they were placed in DARP's custody as a condition of Then again, Judge Smith testified that he knew DARP residents weren't paid at $689.99. That reemphasizes my exhaustion point. They could have brought that claim within the judicial regime. Correct, your honor. What do you think is the legal standard for whether someone is an employee or not? Your honor, I think there are two components to that. The first question is a threshold question that's confirmed by Walling all the way through Olamo and in the Ninth Circuit in Strickland, and then in the Second Circuit in Vaughan, here in Arkansas, the Dixon v. Salvation Army case. What's the answer to the question? I don't need a litany of cases. Just could you tell me what you think the standard is? Yes, your honor. I think the first question is whether there's an expectation of compensation. The second question is if that standard is met, what is the economic reality? That economic reality test turns on who is the primary beneficiary. There are three components of that. The first component is the extent to which the plaintiffs knew that they would not be paid. I'm not satisfied here. The second is the extent to the length of the program in relation to the recovery that's to be provided. That length of program is determined by these drug courts, six or 12 months at a maximum. Again, that same amount of time and duration that was contemplated in Strickland and in Vaughan, far less than three years. What's the third? The third is the extent to which it would be a paid job. The plaintiffs expected a paid job at the conclusion of the program. And again, here. So you think the standard is primary beneficiary? Yes, your honor. In other words, is the arrangement primarily for the benefit of the employer or for the private benefit of the worker? Is that your point? Yes, your honor. Do you think the district court applied that standard? No, your honor. The district court applied a dichotomy between whether or not these were volunteers or whether they were employees. That's the legal standard. Are there any disputed facts that would have to be resolved in order to apply that legal standard? Or do you think that it's just a matter of applying that legal standard to facts that are undisputed? I believe looking at this record standing on its own, applying the primary beneficiary's test is undisputed. This was essentially for their benefit. They could avoid a criminal decision. All right. So I just want to clarify, because you made a big point in your briefs about how Alamo applied a clear error standard to certain facts, as though you thought this could not be resolved as a matter of law. But I hear you saying now, no, that you think the record is the legal standard. Is that correct? Or do you think there are facts that need to be found? I believe if the court did not find that the primary beneficiary's test was satisfied, then that would be a jury question to resolve. So I think if the court's not satisfied that there are no questions of fact as to the application of that test, then that would go to a jury. And so I hate to sidestep the question, but I think the answer is both. It is sort of a heads-I-win, tails-you-lose, if I hear you right. You're saying we win, but if we don't win, it should go to a jury. Yes, Your Honor. But what would be the disputed facts that would be tried? Your Honor, again, Hendren did move for summary judgment. And so we do believe that there are no disputed facts as to who is the primary beneficiary. But what those facts would be, to the extent there is dispute, I don't really see one, the length of the program, the reasons. What the the reasons why they went to DARP was never considered in the first place. And those are, again, we believe those facts are not disputed. We know why they went to DARP, to get out of prison or to avoid going there. All right. Thank you. I've asked several questions and I appreciate your answers. Thank you, Your Honor. I'd like to reserve the remaining time we have for a rebuttal. I've got one more question, not a lengthy one. The record, the district court is rather unclear on this point. Did Hendren, were the amounts Hendren paid to DARP on a per hour basis always exceed the mandatory minimum wage under Arkansas law? Yes. There's no dispute ever. Because the district court just talks about, well, it was unfair because there was, because your other entries had to pay, you had a worker's comp and other expenses. But, but you, you paid, you paid DARP consistent with the Arkansas minimum wage law. Is that correct? Above minimum wage, Your Honor. Yes. Yeah. And you, and you knew, you knew DARP was, was responsible for dispersing the payment either, either for it to recover its own expenses for the program or to pay the employees or to do whatever. Your Honor, the way, when, when, when Hendren was approached by DARP, I'll say they were less than enthused about the prospects of bringing people with active addiction to their factory. And so the owner of Hendren Plastics called Judge Thomas Smith and asked him if this is a legitimate program. And, and he explained yes. And so I think from there, Hendren assumed that whatever DARP did with the money was, you know, had the court's approval. But, but your main witness on the money says Hendren was not aware of how much money DARP remitted, right? Correct. That's your bottom line, right? It's uncontradicted in, I think here, right? Yes, Your Honor. Thank you. Thank you, Your Honor. All right. Mr. Stedman. Good morning, Your Honors. May it please the court. My name is Tim Stedman and I represent Mark Falkman and the other members of this class. This is an important case and the facts are outrageous. DARP does not DARP is not a rehabilitation program and does not hold itself out as rehabilitation. How is, how is that, counsel, how is that relevant to the minimum wage law? Your Honor, in the Maybe, maybe, maybe in terms of remedy, maybe it's, it's relevant if you ever get to remedy. No. But how does it affect the, the minimum wage law question? Your Honor, it goes to, in the, the, some of the cases that were cited by Hendron Plastics and DARP below, this is a major distinguishing factor between the programs offered by the Salvation Army and the program offered by Phoenix House in New York. The fact is that this is essentially just a work camp. The idea is that these individuals will work and that is what will keep them off of drugs and alcohol. The issue is not whether the drug court should have sent them there in the first place. While some of the class members might have testified that they didn't think that the drug court should do this and they didn't think DARP's, excuse me, DARP's program had any benefit, that was not any of the remedies sought in this, in the case below. What was sought in the case below was that the, these individuals would receive their minimum wage. The central factor. Counsel, what in the record do you base that on? I always have a sinking feeling in this case when I read the briefs and to go try to find something in your record. So help me. On what do I base the... Yeah, what do you base it on? You just told us that they expected the minimum wage, right? No, I'm sorry, Your Honor. That's what they sued for. Oh, okay. I heard expected. That's what seeking... I heard the magic word expected. Well, what do you think they expected? I think, Your Honor, that they expected to receive the in-kind benefits of lodging and food, and they were expected to stay there and do that. Hind, just as a point that did come up... Are there any findings on how much that was worth? Economic reality of how much their food, lodging, whatever was worth. No, Your Honor, because that is a unique feature of Arkansas law, at least at the time, is that the credit that an employer can take towards those obligations for all times relevant to this suit was 30 cents per hour. But counsel, that law is gone. When damages are finally determined in this case, that law has been repealed and will not be in effect. I disagree, Your Honor. That law... I know you do. I know you do. But what Arkansas case says that the damages have to be assessed as they would have been when the case was first filed? Your Honor, I believe that's the... There's not an exact one, but the Arkansas rule is that procedural rules are given retroactive effect and substantive rules are not given retroactive effect unless the legislature says otherwise. And just to use an example from standard law, standard wage and hour law, the tip credit is another form of credit. And if the Arkansas legislature today says... I didn't mean to throw this off because that's a remedy question. And I'm much more concerned, for example, what's your response to my suggestion that you had administrative remedies within the judicial system that had to be exhausted? Your Honor, first, that was not raised below. And so I believe that that's waived. We had some new arguments on appeal about jurisdiction, and that wasn't one of them. Well, why then did the district court specifically make a reference to exhaustion? Because under the fact that under the minimum wage law standing alone, there was no requirement to exhaust remedies with the commissioner. The court noted that. Yes, Your Honor. Why doesn't that put exhaustion in play? Because this is a completely different kind of exhaustion. This wasn't raised in class certification. And it is important to note that these individuals were sent to DARP by both Arkansas and Oklahoma drug courts. If DARP or Hendren thought that these issues about the drug court orders were important, they could have done discovery on the point, they could have made arguments. Their argument below was that the plaintiffs were required to exhaust their remedies with the Arkansas Department of Labor under that law. And that the district court correctly held was not required. But the Hendren and DARP did not argue below that they needed to exhaust their remedies with the drug court in some manner. And that might vary wildly from place to place. Wait, wait, wait, wait, counsel. I don't think the exhaustion that's made available under 1698.303 is necessarily with the drug court. It's with the agency that administers the drug court program. Yes, Your Honor. Which leads me to the other question in the October 2nd letter from the ACC. It's just stated, you must comply with the minimum wage law. Which gives, and see our rules, but I don't get, our rules aren't in the record. Was he just, was this a typical regulator, you have to do it because I say so? Yes. Was there a statute? Was there a reg? Was there a rule? Your Honor, this was a, I believe it was, this was a different program. DARP had- Yeah, that's the parole program. Yes, this is their transitional program and there was a set of regulations. So he's telling DARP, based on his parole authority, how DARP has to run the drug court program. Your Honor- Where does he, where does he, where does he get off doing that? Believe DARP to house parolees, DARP had to have a license for transitional housing from the state of Arkansas. And that's where Arkansas Community Correction- Wait, wait, you, okay, I agree, but you submitted that letter as evidence that the ACC just confirms that the district court was right to order minimum wage under the drug court program. And that doesn't follow. No, Your Honor, we submitted that letter as evidence that DARP and Hendren knew or should have known that they were required to pay minimum wage and overtime and comply with the Arkansas Minimum Wage Act in terms of this program. Well, it just isn't evidence of that. You just admitted it's only evidence with respect to the parole program. Yes, Your Honor, but that representation was still made to DARP. So I believe it's still relevant to DARP state- Okay, but knowledge, but the district court took that letter as evidence of the law. No, Your Honor, I don't believe that's correct. The district court looked at ELAMO and applied ELAMO in a- Oh, well, you want me to go find the footnote in his opinion that I'm relying on? I don't have it in front of me, Your Honor. Which footnote in the opinion are you referring to? Oh, it's somewhere he made a reference to the ACC corroborates, confirms my conclusion that the minimum wage law applies to this program. He didn't say it exactly like that, but I think I'm right to infer that was his reasoning. Your Honor, I believe it would put a little too much of a gloss on Judge Brooks's opinion to say he was relying on ACC's recommendation. I believe that the district court applied ELAMO in a straightforward fashion, that these individuals did expect in-kind benefits of lodging. You know, I start from the proposition ELAMO was not a government-run program. So we start with a grave distinction right there and we move to, and then you go all the way to Unicor and federal inmate cases, and then you move to Unicor-type programs that aren't entirely inside the prison and you get a very slippery slope of how you analyze all this. None of that was done by the district court. Your Honor, first, I would, I think at an initial point, DARP is not a government-run program either. In fact, DARP is not licensed by the state of Arkansas. DARP is not regulated by the state of Arkansas in what they do to the drug courts. So 1698 is not a government program? No, Your Honor, this is, I don't believe this situation is distinguishable from a drug court order, and I believe this, there is testimony in the record, I can't pull it out, that at the And if the person in the drug court program had gone to Hendron Plastics by the same... I just read this morning to opposing counsel the order in the Folkman criminal case. It wasn't go get a job. It was you're going to go to this program or you're going to go to trial, or if you've been to trial, you're going to go to jail. Yes, Your Honor, but drug court is a long process with a series of orders, and one of the initial orders, and I know Judge Smith testified about this, is standard in drug court is that these individuals are required to get a job, and if simply the job... I'm looking at it legally, they were all under the criminal court's jurisdiction with a pending case for every hour they worked. That's different than a llama. No, that is different. That's not too far away from the Unicor cases, which ultimately required Congress to pass a special law that their products couldn't be sold in commerce. Yes, Your Honor, but these same individuals who are out typically free in the community in drug court are still under the drug court's jurisdiction, whether they're working at Hendren Plastics directly or whether they're working at Hendren Plastics through DARP as part of DARP's work therapy. Well, counsel, does the record... I don't think that's right. I've got to ask you, now the record reflect, does the record show that some people who were in the drug program at the earlier stages worked at Hendren? I didn't see that reference. Is that in the record? No, Your Honor, I was using that as a... Well, let's don't refer to things not in the record in some way. Let me ask you a very simple question. It seems to me, if economic reality is a touchstone, that it's uncontradicted that Hendren paid for its labor much more than the minimum wage in Arkansas by any measure. So why isn't Hendren, in terms of economic reality, it's more than met the law? No, Your Honor, because Hendren did not make any of those payments to any of their employees. They paid it just like a staffing agent. No, no, no, wait. They gave it to an agent, as many, most corporations in America do. They give their payroll to an agent, trust me. And they gave it to them and wasn't aware of how much money DARP permitted. So Hendren met the law, right? No, Your Honor, because Hendren did not pay any of the workers and they did not even turn it over. Counselor, now listen to my question, because trust me, many, many, it's called payroll administration. Many great big corporations, they pay somebody else. Somebody else then pays the workers. That's routinely done. And when they do that, they pay those third party administrators with the understanding that that money is going to be passed to the employer, not just here is to the employee, I'm sorry, not just here's the money I agreed to pay you, do with it what you want, and I don't really care. And I believe... Now, wait, wait, wait. A lot of those payments will be to an agent who's also providing transportation or housing or healthcare or whatever. And one would expect offsets. Yes, Your Honor. And what Arkansas joint employer case requires someone like Hendren who's making payments that require minimum wage requirements to police what the employee's agent is doing with the money? Your Honor, there are no Arkansas cases either way on that point. OK, what's your best Supreme Court or a circuit case for that? The closest case is from the Missouri. The Missouri Supreme Court applying a very similar regulations under the joint employment context and the situation that you're describing. The remedy for Hendren is to get their money from DARP. The remedy is not to just deprive the employee of their minimum wage and overtime compensation that they are due because Hendren is in the best position to protect itself. Wait, wait, wait, wait. They're not. They don't have to protect themselves. They're not. They're not. They're complying with the minimum wage law. No, Your Honor, they're not. Unless they have a policeman's responsibility. No, Your Honor, they do have a policeman's responsibility in some form or fashion to make sure that the employee receives the minimum wage and overtime pay. Yeah, that's what I asked for a case and you said there's only one that maybe is close and it's the Missouri Supreme Court and you haven't told me whether you cited it. Yes, Your Honor, we did cite it in Tolentino and the other point I would make is there is no case that says turning money over to a third party staffing agency satisfies an employer's minimum wage obligation. We also cited several other federal cases applying this joint employment doctrine in terms of staffing agencies and the employer which those employees are staffed and that they are jointly responsible to pay minimum wage and overtime payments to the employee. Okay, let me let me ask you another one. Who do you say has the power to hire these people? Who hired them and who fires them? That's the ultimate economic reality. I asked the other side. What do you say to that? I say that both DARP and Hendron have the power to hire and fire them. Hendron could exclude anyone from the facility they wanted to. Wait, the other side just said that that's not what the record says. They just took them whoever DARP said they sent. Now don't don't don't you have little time left. Yes, Your Honor. Are you telling me that the record will show, which I thought it showed, that Hendron interviewed them when they came? The other side said no. They told us that a moment ago. Your Honor, they went through training. I don't believe that they've I do believe actually that there was some talk that they interviewed these people, put personnel files together, but on 1253, the agreement, DARP provides a reliable workforce and if Hendron does not think the individual has the work ethic or the proper attitude, they would be glad to replace them, providing they have someone available. And the undisputed fact is that they did that at least three times. Okay, I heard that. Now what about firing? Your Honor, I believe tell them to leave at any time. Yes, Your Honor. Hendron could tell them to leave the facility. Can DARP tell them to leave at any time? Yes, Your Honor. In fact, that happened several times. For example, one of the deponents, Cody Johnson, he hurt his hand. Thank you. Thank you. Go ahead. That's on 1120 of the joint. Go ahead with your argument unless this talks goes with your next point. Thank you. Thank you. Do you agree with your opponent regarding the legal standard for whether someone is an employee? Do you agree with how he stated it at the end of his argument there? No, Your Honor. I believe that the legal standard for employment in this context is exactly what what was stated in Alamo. How would you state the standard? An individual who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons, either for their pleasure or profit, is not an employee. And that's out of the Walling case. Several courts have applied the Walling case to do agree with that approach. Your Honor, if you're the primary beneficiary test from the Second Circuit and glad if the court, if this court has never adopted that test, and if that's the appropriate test to determine whether someone's an employee, Your Honor, I think that that test sometimes leads too much to the conclusion that we should look at someone's subjective motivation for working, which leads to less people being protected. In this case, I believe that the test would produce the exact same result, because even in the Vaughn case, the court placed heavy emphasis on the fact that the individual was just doing work for the Phoenix house. He was not working producing goods in interstate commerce. You also have significant differences about the level of services provided by DARP as opposed to the Phoenix house. I understand the distinction there in the sense that we have a commercial employer here, but how much weight should be given to the fact that a person takes this opportunity to work in order to avoid the criminal justice process? If that's the primary motive for a particular worker, and that's maybe the only reason they're taking this option, does that suggest that the primary beneficiary of the relationship is the person who's avoiding incarceration, for example, in order to have this work opportunity through DARP with Hendren? No, your honor. I would disagree with that and suggest that in this context, the most important thing would be the level of services provided, not the individual's situation, the criminal justice system. To go back, I believe it's in the record that it is a requirement to work a job. Instead of using Hendren, let me use Walmart. An individual who's in the drug court program and gets a job at Walmart to make sure that he has a job and is working through the drug court program has a pretty strong incentive to work, but yet no one would say, well, Walmart doesn't have to pay him because his primary motivation is avoiding the criminal before. Go ahead. I wanted to follow up on your Walmart hypothetical. Go ahead and answer my other question. Anyway, you asked if the court does adopt the primary beneficiary test, what should happen? I believe that if that's the case, it should be remanded to the district court for the district court to apply that analysis in the first instance. Do you think there would be facts that would need to be found in an evidentiary hearing in that case, or would it strictly be a The question of an employer is usually a legal analysis, but what facts are relevant to each of those points since it wasn't argued by either party below in any significant manner? I don't want to just avoid your question, but my real answer is I don't know because I haven't sat through and gone through and said, here were the undisputed facts. The facts seem largely undisputed, and this is a question of law, but applying the undisputed facts that we developed to this test, I don't know whether there would need to be a further evidentiary hearing or not. If we remanded on that basis, it would also include reconsideration of the class certification, wouldn't it? Because every plaintiff is potentially different. Your Honor, I suppose depending on the test that was applied and those undisputed facts, that is possible, but my memory of the record is that the circuit court certified the class, and Hendren and DART pursued an interlocutory appeal of that order, which was unsuccessful. Now wait, counsel, I just looked at the notice of appeal this morning. It includes the class certification order. Okay. It wasn't brief, but I suppose if the court adopts a different test, that might be somewhat of a different consideration. I could just follow up briefly on that primary beneficiary question. I think you said you don't like that as the legal standard because it puts too much emphasis on the motivation of the worker. Did I hear you right on that? Yes, Your Honor, on the subjective motivations and intentions of the worker. But why isn't that important if you have these intern cases and you have the trainee cases where even Walling relies to some extent, doesn't it, on the fact that the trainee was doing this for the trainee's own benefit? Your Honor, that's a small part of it, because people have many subjective reasons for the things that they do, and to try to parse out one of them and extend it, I think that the primary beneficiary test is geared towards a finding that if people are getting some benefit besides their compensation, that they're not protected by wage and hour laws. Does that have to be a subjective inquiry, or can that be an objective inquiry? Your Honor, in seeing the primary beneficiary test, the way it's been applied in the Second Circuit, it seems to me that it is mostly a subjective inquiry about the individual person, rather than an objective inquiry like in ELAMO, the expectation of in-kind benefits. Because just to go to ELAMO, if you applied a primary beneficiary test to ELAMO, I don't see how that person would be covered by wage and hour law when they testified that the thought of receiving compensation was vexed to their soul and that they were working for ELAMO because of their religious reasons. In your Walmart hypothetical, was the worker sent there by DARP through the drug court? Were you just changing the employer, or were you changing the whole model? No, Your Honor. In an earlier version of the drug, if they're not sent to a program like DARP or another recovery center or rehabilitation program, one of the requirements of drug court programs, and I think it's probably drug court programs anywhere, is to get a job. Get a job anywhere. So you were just hypothesizing. If my motivation is to avoid jail, if I work at McDonald's, Walmart, anywhere, there could be an argument made that I'm not an employee because my motivation is staying out of jail. I'm happy to answer any other questions, but I have run out of time. Very good. Thank you. Thank you, Mr. Steadman. Thank you. Let's see. Is there some rebuttal time? Sir, Mr. Mede-Zadigin exhausted all of the 20 minutes initially. I'll give you two minutes just to respond to anything that has come up since your argument. Thank you, Your Honor. I'll be I think the first point that I would make is the distinction between the Arkansas Minimum Wage Act and the Tolentino case from Missouri is that they're different laws. Whatever the regulations say, this is what the Arkansas legislature told courts to look at this issue, which is to not liberally construe the AMWA. And so that, I think, is a key difference. Going back to the Walmart hypothetical, I think that reinforces our Rooker-Feldman argument. And I know that's one that is difficult or nuanced to pinpoint. But the distinction is that if a drug court participant had the opportunity to go get an employment, but then they failed and then they get back in prison and they have other conditions and they failed every single one of them, DARPA is the last chance they get. It's to teach them how to reenter the labor market, how to become, how to have an economic reality. And the fact that that happened here, as Mr. Steadman concedes, shows that the labor component of DARPA, the self-funded mechanism, was a central dimension of the orders that placed them there. But I'd also like to just address the issue of control. I think control might be fitting for cases that are kind of more within the bounds of the, you know, some boundaries of independent contractor. That element of control is relevant. But it's less relevant for interns. Certainly, employers control interns. And here, the drug courts commanded these individuals into DARPA's custody to control them. And so I think control is just kind of, it's a loose fit. As far as the level of services that Mr. Steadman identified, this court held in Arkansas Lighthouse for the Blind that one not need CODL to rehabilitate. I think the last point that I'd like to leave with is that the lower court's decision, if allowed to stand, as Amiki have said, would not only disrupt the Salvation Army program, but also will result in some nonsensical kind of applications of this holding. These participants could unionize under the NLRA. They could sue under the ADA for medical... Counselor, your time's up. Thank you, Your Honor. I apologize for going over. No problem. Thank you, Counsel, because your argument has been very helpful. You were well prepared and responsive. And it's a complex case. We will take two cases. We'll take them under advisement.